41308. GREEN v. MAYOR &c. OF MILLEDGEVILLE.

Argued May 3, 1965—Decided July 9, 1965—
Rehearing denied July 21, 1965.

*Robert H. Herndon, Milton F. Gardner,* for plaintiff in error.
*G. L. Dickens, Jr., Frank W. Armstrong, III,* contra.

JORDAN, Judge. The City of Milledgeville has no express statutory or charter authority to levy and assess compulsory fees or charges for the performance of governmental services such as the collection and disposal of garbage. The city contends, however, that its right to enact the ordinance under review is implied from that power expressly conferred upon it by section 21 of its charter (Ga. L. 1900, pp. 345, 350) to "take all necessary and proper means for keeping the corporate limits of said city free from garbage, trash and filth of all kinds."

Powers of a municipal corporation are fixed by its charter and by general statutory authority relating to such corporations. *City of Macon v. Walker,* 204 Ga. 810 (51 SE2d 633); *Kirkland v. Johnson,* 209 Ga. 824 (76 SE2d 396). A municipality is confined to the exercise of powers expressly granted or necessarily implied, and a necessary implication must be so clear and strong as to render highly improbable that the legislature could have entertained an intention contrary to such implication. *Frank v. City of Atlanta,* 72 Ga. 428; *Georgia R. & Power Co. v. Railroad Commission of Georgia,* 149 Ga. 1 (2) (98 SE 696, 5 ALR 1). As stated in *Beazley v. DeKalb County,* 210 Ga. 41, 43 (77 SE2d 740), it is the well-established general rule that "municipal corporations can exercise only such powers as are conferred on them by law, and a grant of power to such corporations must be strictly construed; and such a corporation can exercise no powers except such as are expressly given or are necessarily implied from express grant of other powers, and if there is a reasonable doubt of the existence of a particular power, the doubt is to be resolved in the negative."

With these principles in view, it is our opinion that the defendant city had no right or power to exact a mandatory and compulsory fee for garbage collection in the absence of specific

statutory or charter authority. Section 21 of its charter, authorizing the city to "take all necessary and proper means for keeping the corporate limits of said city free from garbage, trash and filth of all kinds," is simply an enumeration of the city's general police power in regard to sanitation and health; and while this provision would authorize the city to engage in the function of collecting and removing garbage for the benefit of its citizens and to prescribe reasonable rules and regulations in regard to the duty of a citizen to keep the city free from garbage and trash, the right of the city to levy and collect a mandatory fee or charge for such service cannot be reasonably inferred therefrom. See *Schoen v. City of Atlanta,* 97 Ga. 697 (25 SE 380, 33 LRA 804).

In the *Schoen* case, it was held that while a city may by ordinance lawfully prescribe that unless the owner of a dead animal shall remove it or cause it to be removed beyond the city limits within a specified reasonable time and to a specified reasonable distance, the municipal authorities may deal with such carcass as a nuisance *per se,* and as such take charge of it and make such disposition thereof as will best conserve the public health, it was not lawful to require that such owner, upon removing the carcass or causing its removal within the time allowed him for that purpose, should deposit it beyond the city limits *only at such place as may be designated by the municipal authorities,* or that upon his refusing so to do, *the city could have it removed at his expense to that particular place;* provided the removal intended by the owner contemplates the deposit of the carcass within a prohibited distance from the city line, and such disposition of it when so deposited as will in any event prevent its becoming a nuisance to, or otherwise injuring any of the inhabitants of the city.

Accordingly, while the defendant municipality under its express authority to take necessary and proper steps to keep the city limits free from garbage, trash and filth of all kinds could by ordinance require that the residents of the city remove their garbage or have it removed, and prescribe reasonable rules and regulations pertaining to such removal and penalties for violations thereof, or provide in the alternative, that the residents

of the city may have garbage and trash collected and removed by the city upon payment of a fee for such service, the right to require its citizens to accept such service involuntarily and pay a compulsory fee or charge for same cannot be implied from such express authority. The fact that the present ordinance provides that "outside collectors" may apply for permits to collect and remove garbage and trash does not render it unobjectionable as being involuntary and mandatory in its scope and operation since it is not provided that those covered by the ordinance may escape payment of the compulsory fee exacted by the city by subscribing to an "outside collector" for service or by securing an individual permit to remove one's own garbage and trash.

The city could of course elect to provide such service to its citizens and finance same out of its general tax revenues, as provided for in section 24 of its charter (Ga. L. 1900, pp. 345, 351), for the collection and removal of garbage is a governmental function *(City of Brunswick v. Volpian,* 67 Ga. App. 654 (21 SE2d 442) ; *Mayor &c. of Savannah v. Jordan,* 142 Ga. 409 (83 SE 109, LRA 1915C 741, AC 1916C 240) ; *Mayor &c. of Savannah v. Waters,* 33 Ga. App. 234 (125 SE 772)), in like manner as is the providing of police and fire protection and other services. Section 24 of the charter provides: "That for the purpose of raising revenues to defray the ordinary, current expenses incident to the proper support and maintenance of the city government, the said mayor and aldermen shall have full power and authority to levy and collect an *ad valorem* tax upon all property, both real and personal, in the corporate limits of said city, not to exceed one half (1/2) of one per centum, but where that amount is deemed insufficient, said mayor and aldermen shall have the authority and power to levy an additional tax in the mode and manner provided by the constitution and the laws of the State of Georgia."

Clearly, however, the right of a municipality to exact compulsory fees or charges for the performance of governmental services (such as the collection and disposal of garbage, police protection, fire control, etc.) cannot be implied from the express power of the municipality to perform such services where pro-

vision is made for the defraying of such expenses of government out of tax revenues specifically provided for. The cost of the service here performed by the city is clearly intended to come from the revenue raised under the general taxing power set forth in the above quoted section of the charter. If more revenue is needed by the city in performing its purely governmental functions, the charter provides the method for levying an additional tax.

The exaction of a compulsory fee or charge for the performance of a governmental function would in effect constitute the imposition of a tax upon the involuntary recipients of the service, and nothing is more manifest in our law than the rule that a municipality may not levy and impose taxes by implied authority. Municipal corporations can levy no tax, general or special, on persons or property therein unless the power is plainly and unmistakably conferred by the State. *Lane v. Mayor &c. of Unadilla,* 154 Ga. 577 (114 SE 636). The authority of municipalities to levy a tax must be made clearly to appear, and doubts, if any, as to such powers must be resolved against the municipality; the power to tax is a separate and independent power, and its existence in municipalities cannot be inferred from conferred powers. *Lewis & Holmes Motor Corp. v. City of Atlanta,* 195 Ga. 810 (25 SE2d 699); *Publix-Lucas Theaters v. City of Brunswick,* 206 Ga. 206 (56 SE2d 254).

The allegations of the affidavit of illegality thus showed as a matter of law that the defendant city had no right to enforce its execution against the plaintiff for the reason that the city was without authority to levy and collect a compulsory fee for garbage collection. The trial court erred therefore in sustaining grounds 2, 3, 9, 14 and 15 of the defendant's general demurrers; and such erroneous judgment necessarily rendered the subsequent trial of this case nugatory.

*Judgment reversed. Felton, C. J., and Deen, J., concur.*