CENTRAL OF GEORGIA RAILWAY CO. *v.* JOHNSTON..

1. In the trial of a suit against a railroad company for personal injuries,. when counsel for the defendant had stated in his argument to the jury that he did not take the position that the plaintiff was not hurt at all, and when the evidence in the case demanded a finding on this particular issue that he was hurt, it was not error in the court to charge the jury that it was admitted by the defendant that the plaintiff was injured as the result of the accident.

2. It is not, in the trial of an action by a passenger against a railroad company for personal injuries sustained while traveling on its cars, an error of which the defendant can complain, for the court to define the degree of care and diligence which such a company should exercise as "an extra high degree of care" ; though in defining extraordinary diligence it is better practice for the trial judge to confine himself to the definition as given in the code.

3. Where one of the theories of the plaintiff upon which he relied for a recovery was that the railroad company was guilty of negligence in running its cars over the switch, where the injury occurred, at an unusual and dangerous rate of speed, and the court charged that if the company ran upon the switch at an excessive or improper rate of speed and thereby contributed to and caused the accident, then the defendant would be liable, the words "excessive or improper" might be treated as the equivalent of the word "negligent" ; but it would be decidedly better for the court to use the latter word when charging in such a connection.

4. When in such a trial there was evidence clearly tending to show that the plaintiff's earning capacity had not been totally destroyed, it was improper for the court, especially at the close of its charge, to use the language: "The measure of damages in this case, that is, should you find that the plaintiff is entitled to recover under the rules of law that I have given you in charge and the opinion you entertain of the testimony, then you will find what his earnings will or would be for the length of time he is expected to live, then you would reduce it to its present value." An

error of this kind is, though the court had previously laid down the correct rule on this subject, cause for a new trial, when, taking into view the large amount of the verdict rendered, it can not be safely and fairly said that the jury were not misled by the erroneous instruction given at the conclusion of the charge.

Argued October 21, — Decided December 13, 1898.

Action for damages. Before Judge. Butt. Taylor superior court. July 30, 1898.

The suit was on account of personal injuries which the plaintiff alleged were sustained by him in consequence of the derailment of defendant's train, upon which he was a passenger, the derailment being caused by the running of the train into an open switch. He alleged that the defendant was negligent in running the train into the switch without discovering the condition of the switch in time to have prevented the derailment; also in running the train at such a high rate of speed in approaching and going upon the switch that the train could not be checked in time to prevent the derailment; and in leaving the switch open. The injuries complained of were concussion of the spinal cord, and paralysis of the left leg, the bladder and the rectum, which he alleged resulted from his being thrown from his seat and struck in the back by an object which became detached from the car in which he was sitting. He alleged that these injuries were permanent, and almost totally incapacitated him to labor in his profession as a physician; and he sued for the permanent impairment of his capacity to labor, for lost time and earnings, and for physical pain and mental anguish which he alleged he had suffered and would continue permanently to suffer in consequence of his injuries. The defendant averred that the switch was left open by some unknown person not connected with the defendant; and denied the allegations of negligence. The answer as originally filed denied that the plaintiff received any injuries at all. By amendment, this, with other parts of the answer, was stricken, and each paragraph of the petition containing allegations as to injuries received by the plaintiff was, as to each allegation therein, denied.

After verdict for the plaintiff, defendant's motion for a new trial was overruled, and it excepted. The motion was upon

the grounds, that the verdict was contrary to law and evidence, and excessive, and that the court erred as follows: (8) In withholding from the consideration of the jury the issue as to whether or not the plaintiff was injured as a result of the accident to the defendant's train. (9) In not presenting said issue fairly and squarely to the jury. (10) In charging: "It being admitted by the defendant that the plaintiff was injured as a result of this accident, the law presumes that the defendant was guilty of negligence, and this presumption continues, unless from all the evidence in the case you believe that the defendant was free from negligence." The pleadings and the proof in the case made two issues, one of which was whether or not plaintiff was injured as a result of the accident to defendant's train. (11) In charging: "Although Dr. Johnston may have been injured as is admitted by the road, if there was no want of that care required by the law upon the part of the road and this accident happened to Dr Johnston," etc., it being no where admitted in the pleadings, proof, or trial of the case that Dr. Johnston was or may have been injured by the defendant, except that counsel for defendant stated in his argument to the jury that he did not take the position that plaintiff was not hurt at all. (12) In charging: "By the use of that care and diligence which is required by law, which means an extra high degree of care, although the switch may have been removed left open or partly open, yet if the employee of the road, the engineer, did not use that degree of care and diligence upon his part and ran into that switch, and he might have avoided it by the use of that care, then the road would be liable, although it might have been done by some unknown and outside party." Although the court repeatedly in the charge defined the measure of diligence due by the defendant to plaintiff as extraordinary care, nowhere else in the charge does he undertake to explain the meaning of "extraordinary care," and the simple statement that the degree of care required by law, "which means an extra high degree of care," without explanation or qualification, was error, particularly, given as it was in connection with the charge as set forth. (13) There was nothing in the evidence to warrant the suggestion by the court, in

the charge just quoted, of negligence on the part of the engineer, and the charge was an intimation from the court to the jury.

(14) In charging: "If you find that the train upon which plaintiff was riding was derailed, and the derailment was caused by a misplaced switch, but that the defendant, through its agents in charge of the train upon which plaintiff was riding, failed to use due care to discover that the switch was misplaced, or if they ran upon the switch at an excessive or improper rate of speed, and thereby contributed to and caused the accident, then you will still find for plaintiff, even though you should find that the switch was misplaced by some unknown person, or some person unknown to and disconnected with the defendant." There was nothing in the evidence to warrant the suggestion of failure on the part of defendant's agents in charge of the train to use due care to discover that the switch was misplaced, or that they ran upon the switch at an excessive or improper rate of speed. (15) The charge last quoted was in terms and effect an instruction from the court that if defendant's train ran upon the switch at "an excessive or improper rate of speed," defendant was liable, that is negligent; the determination of which should have been peculiarly within the province of the jury.

(16) In charging, at the end of the charge, and by way of recapitulation (after having charged the jury elaborately and extensively on the subject of the measure of damages): "The measure of damages in this case, that is, should you find that the plaintiff is entitled to recover under the rules of law that I have given you in charge and the opinion you entertain of the testimony, then you will find what his earnings will or would be for the length of time he is expected to live, then you would reduce it to its present value. He would be entitled, if he is entitled to recover at all, to damages for any pain and suffering he might have sustained by reason of the injury," etc. Plaintiff's own evidence all showed that his earning capacity was not totally destroyed, but simply diminished, and that he was at the time of the trial, and had been before, engaged in the practice of his profession; and the charge that his measure of damages would be "his earnings for the length of time

that he is expected to live," reduced to their present value, was erroneous, particularly so when coming at the end of the charge and by way of recapitulation.

*Lawton & Cunningham, John D. Little, W. S. Wallace, C. J. Thornton,* and *O. M. Colbert,* for plaintiff in error.

*Hoke Smith & H. C. Peeples, W. E. Steed,* and *A. A. Carson,* contra.

LEWIS, J. 1. It appears from the record in this case, that the general counsel for the plaintiff in error, in his argument on the trial before the jury, stated that he did not take the position that plaintiff was not hurt at all. Error is assigned on a statement made by the judge in his charge to the jury, that it was admitted by the defendant that the plaintiff was injured as the result of the accident. Conceding that this charge was based entirely upon the above statement of counsel, we do not think an unfair construction was given this language. Although such an issue was presented by the pleadings in the case, the defendant alleging in its plea that the plaintiff had received no injury whatever as the result of the accident, yet the court and jury might very reasonably have inferred from the above statement of counsel that it was no longer contended that plaintiff received no injury whatever, and that the contention in the pleadings on this point had been abandoned. But, apart from this, after a careful review of the entire testimony in the record, the proof was so positive, direct, and overwhelming that the plaintiff was hurt in consequence of the derailment of the train, that the finding on this issue was demanded by the evidence. If this be true, even if the court erred in concluding that a formal admission had been made as he charged, it was a harmless error, and is not therefore ground for granting a new trial. On this particular point with reference to the injuries received by the plaintiff, considered in the light of all the testimony on the subject, the real contest between the litigants seems to have been in reference to the extent of the plaintiff's injury, the one side contending that he was seriously and permanently injured, and the other, that his injuries were only of a slight and temporary nature. In the case of *McCurdy* v. *Binion,* 80 *Ga.* 691, it was held not to be error for the judge to state certain facts as

data which may be used by the jury in reaching their verdict, it having been proved in the case that the facts stated were admitted by the defendant, and were not in contest. To the same effect see *Chambers* v. *Walker*, 80 *Ga.* 643 (3); *Crusselle* v. *Pugh*, 67 *Ga.* 430 (2). The inference is unavoidable in this case, that the charge of the court complained of, even if erroneous, did not affect the finding of the jury. Judging from the amount of their verdict, they must have reached the conclusion that the plaintiff was hurt to the full extent he claimed, and that his injuries were of a serious and permanent nature. They were certainly not constrained to reach this conclusion from the statement of the court that it was conceded that the plaintiff was hurt as the result of the accident; for the judge, in other portions of his charge, fully and fairly covered the contentions and issues between the parties with reference to the extent of plaintiff's injuries. This disposes of the 8th, 9th, 10th and 11th grounds of the motion for a new trial.

2. Complaint is made, in the 12th ground of the motion, of the charge of the court which in effect defined the diligence required of the railroad company to be "an extra high degree of care." The plaintiff being a passenger upon the defendant company's car when he was injured, the duty it owed to him under § 2266 of the Civil Code was extraordinary diligence. § 2899 defines that diligence to be "that extreme care and caution which very prudent and thoughtful persons use in securing and preserving their own property." In charging upon this subject, the proper and safer method for the judge to adopt would be to confine himself to the statute. Its definition can not well be simplified or made clearer by an attempt to use synonymous terms, or to convey its meaning in other words. But the definition given by the court, even if erroneous, is not such an error as the defendant can complain of. If there was any error in it, it was in favor of the company, and not the plaintiff; for the words used by the judge do not indicate in such forcible language the degree of care required as do the words in the statute. That extreme care and caution which very prudent and thoughtful persons use would naturally impress one as meaning something more than an extra high degree of care.

Many courts of last resort in other States of the Union have defined the diligence required by carriers of passengers to be the "*highest* degree of care," and some have gone possibly to a greater extent, by defining the rule to mean "every precaution which human skill, care, and foresight can provide." Caldwell *v.* Steamboat Co., 47 N. Y. 282. "The utmost care and diligence in providing against those injuries which can be avoided by human foresight." Dodge *v.* Steamboat Co., 148 Mass. 219. "The utmost care and diligence of very cautious persons." Taylor *v.* Ry. Co., 48 N. H. 304. "The greatest possible care and diligence." Railroad Co. *v.* Wightman, 32 Va. 394. But as our statute specifically defines what is meant by extraordinary diligence, neither the adjudications of other courts on the subject, nor the definitions in standard dictionaries, need be invoked to throw light upon the subject. No request having been made to the court to give in charge this statutory definition, the defendant company can not complain of a construction of the law which, to say the least of it, does not impose upon the railroad a greater degree of diligence than that required by law. This disposes of the 12th and 13th grounds of the motion.

3. In the argument for plaintiff in error it was especially contended that the charge complained of in the 14th and 15th grounds of the motion, to the effect that if defendant's train ran upon the switch at an excessive or improper rate of speed, and thereby contributed to and caused the accident, then it would be liable to the plaintiff, was error, because the question of negligence was one solely for the jury, and that even if the speed of the train was excessive or improper, it was still for the jury to say whether, under all the circumstances of this particular case, such a rate of speed constituted negligence. It is unquestionably true that questions of negligence are for the jury, and the court can not instruct them that particular *acts* amount to negligence. But this the judge did not undertake to do in his charge. The term "excessive" means tending to, or marked by excess, which is defined by Webster to be, "the quality or state of exceeding the proper or reasonable limit or measure." In the case of Chadbourne *v.* Town etc., 48 N. H. 196, the term "improper," when applied to human conduct, is defined to be,

"such conduct as a man of ordinary and reasonable care and prudence would not, under the circumstances, have been guilty of." It would have been manifest error if the judge had charged the jury what particular rate of speed would have been excessive or improper; but if a person is guilty of excessive or improper conduct which results in injury to another, it necessarily follows that the injury is occasioned by the negligence of the wrong-doer. For the judge, therefore, to charge the jury in the words used by him, was nothing more nor less than telling them, in effect, that if the plaintiff's injuries were caused by the negligent conduct of the defendant in the rate of speed at which it was running its car, the defendant would be liable. The question as to whether the speed actually used was improper or negligent was left entirely to the jury. We think, therefore, that the words "excessive or improper," in the connection in which they were used by the court in his charge, might fairly and properly be considered as equivalent to the word 'negligent," and that there was no error in overruling the motion for a new trial on this ground. It would, however, have been decidedly better for the court to have used the word "negligent" itself in lieu of the above language employed by him, as this would not have left the legality of the charge, or its true intent and meaning, open to criticism or doubt.

4. It clearly appears from the record in the case that the earning capacity of the defendant in error was not totally destroyed by the injuries he received. He himself admitted upon the stand that he had pursued the practice of his profession to some extent after receiving these injuries, and had made some money in his business, specifying the amount. Indeed, it was not contended by his counsel that there was any testimony in the record from which it could be inferred that the ability of the defendant in error to pursue his regular occupation to some extent, and to earn money in such pursuit, had been entirely destroyed. In the charge of the court complained of, the jury were, in effect, instructed that they could take, as a basis of a recovery for any financial loss which the plaintiff below may have sustained, what his earnings will or would be for the length of time he is expected to live, and after ascertaining such

amount, they should then reduce it to its present value. It was manifest error, inasmuch as the language used gave the jury the latitude of basing their finding of damages upon the entire earnings of the plaintiff, instead of upon the difference between what his earnings would be after the injury, and what they would have been had he not been hurt. It was contended, however, by counsel for defendant in error, that in other portions of the charge the court fairly and fully instructed the jury on this subject, and that, considering the charge complained of in connection with the entire charge upon this subject, the jury could not have been misled by the instructions given them. It is true, as contended, that the judge did, in another portion of his charge, correctly state the law on this particular point. The charge complained of, however, was not given in the same connection. After instructing the jury fully upon the measure of damages, the court proceeded to give them at considerable length the rules of law in regard to pleadings, degree of diligence railroad companies should exercise in such cases, rules of evidence, and other matters not directly connected with the subject relating to the measure of damages in this particular case. The judge then, at the conclusion of his charge, again adverted to this subject relating to the measure of damages, instructing the jury that they should find what the plaintiff's earnings will or would be for the length of time that he was expected to live, and to reduce that amount to its present value. We think the language used was calculated to leave upon the minds of the jury an erroneous impression as to what rule should govern them in reference to this very important issue on trial; and coming, as it did, at the conclusion of the charge, and being the last impression received from the court, it might have supplanted the correct ideas the jury may have at first entertained from previous portions of the court's language. This court has repeatedly held that where an erroneous rule of law is given to the jury on a material issue in a case, a new trial will be granted, notwithstanding the correct rule may have been announced in other portions of the charge. *Georgia R. Co.* v. *Hicks*, 95 *Ga.* 301; *Powell* v. *State*, 101 *Ga.* 11 (6); *Port Royal & W. C. Ry. Co.* v. *Davis*, 103 *Ga.* 579. It does not follow, however, that

because one portion of the charge is totally repugnant to another, even on a material point, such a mistake on the part of the court will necessarily be reversible error. If, for instance, the verdict rendered by the jury was demanded by the evidence, a new trial will not ordinarily be granted, regardless of errors of law committed. Or if the verdict was for such an amount as to clearly indicate upon its face that the jury must have applied the correct rule laid down by the court, and not the erroneous rule, it would be at once concluded that the error worked no harm to the plaintiff in error. The real question seems to be whether or not, on account of such conflicts or inconsistencies in the instructions of the court upon vital issues in a case, it can with perfect safety and fairness be said that the jury were not misled to the injury of the complaining party. Applying this doctrine to the case at bar, we think there was error in overruling this ground of the motion for a new trial. The verdict found by the jury was certainly not demanded by the evidence; nor was there anything in the amount of the finding to indicate or to authorize the inference that they did not apply the erroneous instead of the correct rule on the subject of the financial damages which the defendant in error has sustained; for, if the last rule on this subject laid down by the court had been adopted by the jury, the most favorable view of the evidence that could be taken indicates that they nevertheless found, in addition to such damages, several thousand dollars for pain and suffering.

We do not mean to intimate that the verdict in this case was contrary to evidence, or that it was so excessive as to authorize this court to infer bias and prejudice in the minds of the jury either against the plaintiff in error or for the defendant in error. As the case goes back for a new trial, we refrain from expressing any opinion whatever on this subject. The judgment of the court below is reversed solely on the ground indicated in the fourth headnote.

*Judgment reversed. All the Justices concurring, except Lumpkin, P. J., and Little, J., absent.*